THE STATE, SAMUEL WOOD, RELATOR, v. MORRIS G. BOSSET, RESPONDENT.

Argued June 4, 1913—Decided November 10, 1913.

1. The act of 1895, page 311 (*Comp. Stat., p.* 610), provides a complete statutory scheme for the change of ward lines and creation of new wards in cities and supersedes all previous legislation on the subject.
2. Under said act, when ward lines are changed or new wards created, the officers representing pre-existing wards continue to represent the same territory until their terms of office expire.

On *quo warranto.* On demurrer to pleas.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the relator, *William J. Kraft.*

For the respondent, *Bleakly & Stockwell.*

The opinion of the court was delivered by

PARKER, J. The question in this case is whether the division of one ward of the city of Camden into two new wards entitled the council of that city to appoint an additional freeholder *ad interim,* as representing one or the other of the new wards so created.

The ward so subdivided was known as the seventh, and up to the division was represented by a freeholder named Walter Johnson, who was elected in November, 1911, to serve for two years from January 1st, 1912. The division took place in January, 1913, by virtue of legislation hereafter referred to; and the council deeming that the additional ward was entitled to a freeholder and that a "vacancy" existed, appointed the respondent, Bosset, on January 30th as freeholder to represent the new ward carved out of the seventh, relying on a provision of the charter authorizing the filling of vacancies generally, and on statutory authority to fill vacancies found in *Pamph. L.* 1894, *p.* 248, § 5, and *Pamph. L.* 1904, *p.* 290, *ch.* 155. Prior to this appointment the board of freeholders of Camden county had met and organized, each existing ward of Camden being duly represented, the seventh in particular by the said Johnson.

The question principally argued before us is whether the division of the ward created a "vacancy;" relator relying on the case of *Vander-Bach* v. *Freeholders, 36 Vroom 522,* and respondent on *Davis* v. *Davis, 28 Id.* 80. Neither decision seems to be controlling. The Vander-Bach case turned on an entirely different point, and the question now presented was expressly passed. In the Davis case the whole board of freeholders was ousted by statute and the "vacancies" were those created by another statute organizing an entirely new board and which could not be filled by election for some months.

We consider that under the legislation relied on no vacancy existed. The acts invoked are the act of 1890 (at *p.* 114 (*Comp. Stat., p.* 1021), and the act of 1895 (at *p.* 311) (*Comp. Stat., p.* 610), the first section of which was amended in 1901. *Pamph. L., p.* 12. The act of 1890 gives cities of the second class power to divide one ward into two. That of 1895 permits any change whatever of ward lines and any increase in number of wards up to sixteen; and it has been held by this court that the act of 1895 superseded all previous legislation on the subject and became the sole means for division of cities into wards, the change of ward lines, and

creation of new wards. *McCulley* v. *Elizabeth,* 37 *Vroom* 555. Section 2 of that act provides (*Comp. Stat., p.* 611): "That all officers elected or appointed for existing wards or aldermanic districts in any city wherein the ward or aldermanic district lines are changed, and new wards created, as herein provided, shall continue in office until their respective terms of office shall have expired, and until others are duly appointed or elected to take their places, and that hereafter such number of officers shall be elected or appointed from the new wards as may be elected or appointed from the wards now existing; and vacancies therein may be filled in the manner now provided by law for filling vacancies." This can mean nothing else than that the right of existing officers to represent the territory from which they were elected should continue until the expiration of their terms without disturbance by change of ward lines or subdivision of wards. Consequently if the act of 1895 controls, as we think it does, Mr. Johnson continues to represent the old seventh ward until the expiration of his elective term, and there is during his incumbency no "vacancy" for the respondent to fill.

Were the act of 1890 in force the result in this case would not be changed. Section 2 of that act provides (*Comp. Stat., p.* 1021):

"That the officers of the old ward so divided shall continue to act as such officers for the remaining part of the old ward, and that common council shall appoint election officers for the new ward or wards so created, and shall also fix and determine the election districts in such new wards and also in the old wards so divided; and that at the next general charter election following such provision, councilmen, commissioners of public instruction, freeholders, constables and all other officers to be elected for the wards of any such city shall be elected in the same manner for the new ward or wards, and when the terms of any such officers expire at different periods they shall be elected at such election for long and short terms respectively."

This provision evidently does not contemplate the ap-

pointment of ward officers by the council preceding the holding of an election for that purpose.

Our conclusion is that the relator is entitled to judgment on the demurrer to the plea.